# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JERRY T. IRWIN, | Case No. 20-CV-0755 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| DAVID MILES, ALLISON COLLINS, KATIE MCDOWELL, KAYLA TAYLOR, TAMMY SHELTON, SHANNAH HALONIE, MIKE ZIMMERMAN, ADAM YOUNG, COURTNEY MENTEN, DERRICK KOECHER, DR. AMY FARMER, DR. CRYSTAL LEAL, MATTHEW SARBERG, MARY WARD, and BRIAN NINNEMAN, | |
| Defendants. | |

---

This matter is before the Court on Defendants' Motion to Dismiss (Dkt. 20) ("Motion"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends the Motion be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

**A.    Allegations and Relief Sought in Plaintiff's Complaint**

Plaintiff Jerry Irwin ("Irwin" or "Plaintiff") alleges in his Complaint as follows:

On July 6, 2017, the Honorable William Ekstrum of Washington County District Court entered findings of fact and conclusions of law that Irwin was not a person who

was mentally ill pursuant to Minn. Stat. § 253B.02, subd. 13, and denied a request for a *Jarvis* Order.[1]  (Dkt. 1 ¶ 23; Dkt. 30-1.)  In denying the petition to commit Irwin as mentally ill, the judge found that Irwin suffered from schizotypal personality disorder, which is not a substantial psychiatric disorder, and that his illness did not pose a substantial likelihood of physical harm to himself or others.  (Dkt. 30-1 at 3.)[2]

Subsequently, on July 16, 2019, Irwin was admitted to the Minnesota Sex Offender Program ("MSOP") on a judicial hold for civil commitment as a Sexually Dangerous Person ("SDP").  (Dkt. 1 ¶ 24.)  Irwin, as of the date of the Complaint, was on judicial hold at the MSOP in Moose Lake, Minnesota ("MSOP-Moose Lake").  (*Id.* ¶ 6.)

On July 25, 2019, Defendant Dr. Amy Farmer diagnosed Plaintiff with schizophrenia, unspecified type, as part of Plaintiff's initial mental health assessment. (*Id.* ¶¶ 17, 25.)  Defendant Dr. Crystal Leal was Dr. Farmer's supervisor and responsible for ensuring a proper diagnosis.  (*Id.* ¶ 18.)

On July 29, 2019, Irwin contacted Defendant Allison Collins about him being moved to living unit Alpha on the basis that the unit he was then housed in (the Behavior Therapy Unit) was for those who were mentally ill.  (*Id.* ¶ 26; *see id.* ¶ 1.)

On July 31, 2019 Collins finalized an individual treatment plan ("ITP") for Irwin that had the goals of forcing Irwin to admit that he is mentally ill, and eventually cause

---

[1]    *See Jarvis v. Levine*, 418 N.W.2d 139, 148-49 (Minn. 1988) (providing that medical authorities seeking to treat a patient involuntarily with neuroleptic medications must first obtain court approval).

[2]    Unless otherwise stated, the page numbers referenced in this Report and Recommendation refer to ECF pagination.

him to become medicated for that mental illness. (*Id.* ¶¶ 8, 27.) When confronted about the July 6, 2017 Order from Judge Ekstrum that he did not find Irwin suffered from schizophrenia, Collins responded, "well our program has its own doctors who make their own diagnosis[] and we don't recognize what that court said." (*Id.* ¶ 8.)

On August 14, 2019; September 26, 2019; January 9, 2020; January 15, 2020; February 14, 2020; and March 2, 2020, Defendant David Miles updated Irwin's Individual Program ("IPP"),[3] which chilled Irwin's speech by limiting his ability to talk about his personal projects by only allowing him to approach the staff desk no more than twice a day for ten minutes each time. (*Id.* ¶¶ 22 & n.2, 28-29, 32-33, 39, 44.) The IPP, which prevents Irwin from being able to have rational conversations with the staff about the projects that he is working on, led to his current placement in Omega Unit, where he is deprived of access to recreation, education, or vocational programing to help him cope with the stress of the facility while he is on a judicial hold for commitment. (*Id.* ¶ 7.)

Plaintiff attempted to receive information from the education department "for one of his ideas" and to take tests to measure his education, but was told he could not use the library or use a computer until he was moved out of Omega Unit, which was when the court decided his commitment status. (*Id.* ¶¶ 31, 37.) He was told that his IPP stated he would not be allowed to move out of this unit because of his "continued failure to comply, verbally abusing others and threatening staff." (*Id.* ¶ 31.)

---

[3]      Collins issued the first IPP and refused to change it for unarticulated reasons, according to the Complaint. (*Id.* ¶ 8.)

Plaintiff claims that "most of these write-ups are because Mr. Irwin refuses to follow an IPP that allows staff to chill his speech and force him to admit that he has a mental illness." (*Id.* at n.3.)

On October 28, 2019 and February 5, 25, 27, and 28, 2020, Plaintiff received Behavioral Expectations Reports ("BERs") for not following his IPP, in particular for abuse/harassment, failure to comply, being in an unauthorized area, and/or disturbing others. (*Id.* ¶¶ 30, 38, 37, 42, 43.)

On February 26, 2020, Irwin sent a client request to Defendant Brian Ninneman addressing his concerns about his IPP being a violation of his freedom of speech. (*Id.* ¶ 41.)

On March 4, 2020, the Behavior Expectations Unit ("BEU") hearing panel assigned Irwin to 14 days of restricted status 3 ("RS3") for the BERs from the 27th and 28th of February.[4] (*Id.* ¶¶ 11, 45.) Defendant Shannah Halonie, a security counselor at MSOP-Moose Lake, was the individual who wrote Irwin up for not following his IPP, leading to the 14 days of restrictions, which Irwin asserts unlawfully chills his freedom of speech. (*Id.* ¶ 11.)

Plaintiff then sent a request to Defendant Tammy Shelton, who talked with Irwin about his concerns. (*Id.* ¶ 45.) His request had a two-page typed attachment, which Shelton sent to Irwin's primary therapist Miles, with a handwritten note that read: "Jerry

---

[4]    Plaintiff also received restricted status in July 2019 for violating the IPP based on a BER signed by Defendant Mike Zimmerman, the unit director of Unit Alpha (*id.* ¶ 13), and again on October 28, 2019 for again violating the IPP, based on a BER written up by Defendant Adam Young, which was signed by Defendant Derrick Koecher (*id.* ¶ 16).

Irwin typed these up last night.  He is spinning on clinical breaking the law and wants staff to report it.  Tammy." (*Id.*)  Miles sent Irwin's request back to him with Shelton's note and he wrote a response on the request with a yellow Post-it note that read: "Jerry - Please review your most updated IPP.  Primary Therapist D. Miles." (*Id.*)  Shelton also discouraged Plaintiff from contacting Miles about the attempts to force him to take medications using the IPP and IPT. (*Id.* ¶ 12.)

On March 6, 2020, Irwin sent a client request to Defendant Courtney Menten, the Associate Clinical Director of the MSOP-Moose Lake campus, informing her of his rights being violated, which included a printout of the United States Constitution's First Amendment and Ninth Amendment, Minnesota's Constitution Article 1 Secs. 3 and 16, and Minnesota's Health Care Bill of Rights, Minn. Stat. § 144.651. (*Id.* ¶¶ 14, 46.)

At an unidentified point in time, Plaintiff also informed Defendant Mary Ward, the Client Rights Coordinator (CRC) for Omega Unit and the individual responsible for ensuring that a client's right are not violated, that his IPP was violating his rights, and she responded by directing him to his clinical team, who Irwin identifies as the individuals that were violating his rights. (*Id.* ¶ 20.)

On March 7, 2020, Irwin sent a request to Defendant Kayla Taylor asking her to end his IPP immediately because it was a violation of his rights, citing to "the United States Constitution and Minnesota's Constitution in this request." (*Id.* ¶ 47.)  On March 10, 2020, Taylor responded to Irwin's request as follows: "According to your IPP, you are 'not bring project concerns to the <u>front desk</u>.'  'Staff are able to engage in conversation or play a game with you away from the security desk.'  please refer back to

your copy of the IPP, and engage in pro-social engagements with peers and staff." (*Id.* ¶ 48 (typographical errors original).) She did nothing to address the concern in the request. (*Id.*)

Plaintiff also asked Defendant Katie McDowell, the MSOP-Moose Lake clinical supervisor of Omega Unit, to address the issue of his IPP violating his rights via a client request, but she declined, stating that it did not violate his rights. (*Id.* ¶ 9.) Similar allegations were made against Menten, who, after being informed that Irwin's IPP is a violation of his First Amendment rights, "refused to direct the clinical staff under her to end [his] IPP as it allows the staff that she supervises to punish Mr. Irwin for speaking to staff." (*Id.* ¶ 14.)

Plaintiff asserts two counts. Count One asserts that Defendants have instituted an ITP that is designed to force Irwin to admit that he is mentally ill and suffers from schizophrenia based on the following:

> In 2017, a competent court of Minnesota's district courts found that Mr. Irwin was not a mentally ill person. The MSOP's employees have taken actions that appear to be designed to be a violation of a courts Conclusion of Law and order. A finding that Mr. Irwin is not Mentally Ill as a Schizophrenic Personality is a protected right and to have actions that undermine this right as a way [to] force him to take psychiatric medications and admit that he suffers from the mental illness known as schizophrenia is and should be a violation of the law and Constitution. The defendants have chilled Mr. Irwin's right to free speech as well as his right to make his own decisions about his health care (a right that Mr. Irwin was awarded by the courts in Minnesota when he was found not to be mentally ill). Because Mr. Irwin is under a new petition for commitment as a Sexually Dangerous Person (SDP) under 253D does not give the MSOP leave to create an environment that is hostile and highly stressful in order to cause Mr. Irwin to be committed as a SDP and admit that he is dangerous. The MSOP employs tactics through its staff members that create chaos and distrust, and this makes the living environment very difficult to cope with, and then if a client

reacts adversely to this treatment that client is then placed on a specialized unit for problematic individuals, a unit that eliminates 90% of the clients coping measures. This is what happened to Mr. Irwin. He has plans on how to manage his stress levels and the MSOP keeps him housed in a unit where he cannot utilize these plans. While he is on the BTU, Mr. Irwin is only allowed one day of Gym time (that is if he is not on restrictions), he is not allowed to go to elective. It should be noted by the court that MSOP files reports with the Courts that are ultimately used to show how Mr. Irwin is dangerous to the public but what the courts do not know is that the reports are based on how a client of the MSOP responds to the harsh and hostile treatment of the staff that work for the MSOP. These reports will ultimately cause the court to be biased against Mr. Irwin in his commitment and will likely result in him being civilly committed as a SDP education classes, he is not allowed to recreate with the rest of the Population, he is not allowed to utilize the Hobby Craft Room, he is not allowed to utilize the Multipurpose room, and he is not allowed to go to the main yard and participate in the outside recreation activities such as Softball games, touch football games, running the track, or any of the other rec sponsored activities like the Bags Tournaments and Frisbee Golf games. Mr. Irwin is isolated and punished because he refuses to admit to the MSOP that he has a mental illness and refused to follow an IPP that chills his first amendment rights to free speech. If Mr. Irwin admits that he has a mental illness it will be used against him in court by the state. Mr. Irwin asks this court the following questions for consideration. Can a police officer employ similar tactics to get an admission of guilt to a crime and would that admission of Guilt fall under compelled speech? Can a state official use punishment to compel an admission of mental illness?

(*Id.* ¶ 50.)

Count Two asserts that Defendants' use of the IPP illegally chills his right to free speech:

Because Mr. Irwin likes to talk about his projects and idea's [sic] that might be a help to the rest of the world's problems (hunger, disposing of radio-active materials in a way that does not harm the environment etc. . .) and the staff do not know what he is talking about does not make it ok for them to say that he cannot talk to them about these ideas. These are things that are of importance to Mr. Irwin and he likes to share this information with other's [sic]. He attempts to help people that do not understand these things to learn what he is talking about and the staff seem not to like talking to him. So they instituted an IPP that limits his ability to talk to the staff, and if he does not

follow this IPP he is given a BER and then has to serve restrictions.  Mr.
Irwin asks the court the following question: Can the defendants punish Mr.
Irwin for not following his IPP that limits how and when he can speak to
staff?  Further does this plan create added stress that is designed to create an
opportunity to punish Mr. Irwin when he reacts adversely to the punishments
for not following his IPP?

(*Id.* ¶ 51.)  These counts are on based on "a violation of the first amendment and Title 42

USC §1983,[5] and USC § 9501[6] Bill of Rights and Minnesota Law under §144.651 and

§253B.03.  This action is being brought against the defendants in their individual

capacities and official capacities."[7]  (*Id.* ¶ 3.)

---

[5]    "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was
deprived of a right secured by the **Constitution and the laws of the United States** and
that the deprivation was committed by a person acting under color of state law."
*Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013) (emphasis added).

[6]    While it is unclear what statute Plaintiff is relying on as part of this incomplete
citation, to the extent that he is relying on 42 U.S.C. § 9501, titled "Bill of Rights," courts
have concluded that "Title 42 U.S.C. [] § 9501 . . . [does] not create a private cause of
action, nor any enforceable Federal rights."  *Semler v. Finch*, No. CIV.07-4252
JNE/RLE, 2008 WL 4151825, at *9 (D. Minn. Sept. 3, 2008), *aff'd*, 333 F. App'x 156
(8th Cir. 2009).

[7]    Plaintiff also appears to be asserting new claims and allegations as part of his
opposition to the motion to dismiss, such as a claim that he has not been provided with
adequate therapeutic help or a therapist he is comfortable with, and that he is now not
allowed to talk to staff to any degree.  (Dkt. 36 at 8-9, 15, 17.)  A response to a motion to
dismiss is the incorrect mechanism to add new allegations to a complaint.  Allegations
made in subsequent legal memoranda should not be used to correct deficiencies within a
complaint.  *See Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 887 (D. Minn.
2010) (citation omitted).  "To hold otherwise would mean that a party could unilaterally
amend a complaint at will."  *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992,
995 (8th Cir. 1989) (citation omitted).  To the extent that Plaintiff seeks to amend his
Complaint, he should do so, to the extent appropriate, in compliance with Rule 15 of the
Federal Rules of Civil Procedure and Local Rule 15.1.

In his request for relief, Plaintiff seeks: (1) that the court find that Defendants are attempting to compel speech through the use of the IPP/ITP; (2) that the Court find that Defendants illegally chilled his First Amendment rights by use of the IPP and its BER provisions to punish him for not following the IPP; (3) that the Court issue an injunction barring Defendants from continuing their actions against Irwin; (4) that Irwin be awarded damages for all the time that he served on restriction for refusing to follow an IPP/ITP that chilled his rights to free speech and compelled him to speak in a manner that would get used against him in his commitment case; (5) that Defendants all be barred from performing the same or similar actions against Irwin in the future; and (6) that Irwin be immediately moved from Omega Unit to a conventional treatment unit that would allow him to utilize the other opportunities in recreation, education, and library to reduce his levels of stress.  (*Id.* ¶ 52.)

Plaintiff initiated this action of March 19, 2020.  (Dkt. 1)

On April 30, 2020, Itasca County District Judge Heidi M. Chandler concluded in her order committing Plaintiff to the MSOP program that Irwin satisfies the requirements for commitment as a "sexually dangerous person" under Minn. Stat. § 253D.02, subd. 16.[8]  (Dkt. 30-2 at 96.)

---

[8]    Minn. Stat. § 253D.02, subd. 16 defines a "sexually dangerous person" as follows:

Subd. 16. Sexually dangerous person.

(a) A "sexually dangerous person" means a person who:
(1) has engaged in a course of harmful sexual conduct as defined in subdivision 8;

The present matter is before the Court on Defendants' Motion to Dismiss.

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted). Thus, subject matter jurisdiction "is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge whether the court has subject matter jurisdiction to hear the matter. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008). When considering a Rule 12(b)(1) motion, a district court may consider matters outside the pleadings. *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

---

(2) has manifested a sexual, personality, or other mental disorder or dysfunction; and

(3) as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 8.

(b) For purposes of this provision, it is not necessary to prove that the person has an inability to control the person's sexual impulses.

When deciding a Rule 12(b)(1) motion, the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn*, 918 F.2d at 729 n.6 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). In a facial challenge to jurisdiction, such as in this case, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In contrast, in a factual attack, the court makes "inquiries into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6. The nonmoving party in a factual challenge does not enjoy the benefit of Rule 12(b)(6) safeguards. *Id.* "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)

> (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The Eighth Circuit has interpreted the "face" of the complaint as including public records and materials embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012); *see also Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch*, 304 F.3d at 802-03); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir. 2007) (state court records).[9] *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

### III.   ANALYSIS

**A.   Official Capacity Claims Against Defendants**

Defendants argue that Plaintiff's claims for monetary damages against them should be dismissed under the Eleventh Amendment, and that the official capacity claims

---

[9]    The Court notes that Plaintiff demanded in his opposition that the court records and BER reports not be considered on the Motion to Dismiss. (Dkt. 36 at 19-20.) However, as set forth above, the Court may consider court records on a motion to dismiss. That said, the Court will not consider the BER reports, even those pertaining to Plaintiff, as part of this Motion because they are not encompassed by the Complaint and are inconsistent with the allegations in the Complaint or otherwise immaterial to the present motion, and otherwise declines converting this motion into a motion for summary judgment. *See Shqeirat v. U.S. Airways Grp., Inc.*, 515 F. Supp. 2d 984, 992 (D. Minn. 2007).

should otherwise be dismissed for failure to state a claim.  The Court will proceed with addressing these arguments in turn.

### 1.    Section 1983 Official Capacity Claims for Damages

Defendants argue that Irwin cannot maintain a claim for damages against them in their official capacities under § 1983 as the claims are barred by the doctrine of sovereign immunity pursuant to the Eleventh Amendment.  (Dkt. 22 at 12.)  Plaintiff argues that dismissal is not appropriate because he has alleged a tort.  (Dkt. 36 at 8.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).  "Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  *Graham*, 473 U.S. at 169.  Minnesota has not waived its Eleventh Amendment immunity from suit in federal court.  *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985).  Congress has not abrogated immunity to Section 1983 claims.  *Burke v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991).  Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, the Court recommends

dismissal of the § 1983 claims to the extent Irwin seeks monetary relief against Defendants in their official capacities.

### 2.      Section 1983 Official Capacity Claims for Prospective Relief

"[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 438 (2004) (citing *Ex parte Young*, 209 U.S. 155-56 (1908)); *see also Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) ("[D]eclaratory judgment and injunctions against future retaliation [] is the sort of prospective relief that can be sought in federal court from state officials sued in their official capacities, notwithstanding the state's sovereign immunity."). Defendants argue that Plaintiff fails to state a claim against Defendants in their official capacities under § 1983 because he does not allege that any state policy or custom is responsible for the alleged constitutional violations. (Dkt. 22 at 14.)

Under 42 U.S.C. § 1983, "[a] suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell*, 436 U.S. at 690 n.55). "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (quoting *Monell*, 436 U.S. at 694).

"Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985), and *Graham*, 473 U.S. at 165-66) (citation omitted).

"To establish liability in an official-capacity suit under Section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citations omitted).

Numerous cases explain how to allege a relevant policy, custom, or final authority, but reviewing that precedent is unnecessary here as the Complaint fails to say anything about any policy, custom, or final authority leading to the alleged constitutional violations at issue, or for that matter how each respective Defendant enacted or enforced an unconstitutional policy or custom, nor has it plausibly alleged how Defendants effected their final authority in an unconstitutional manner. *See Young Am.'s Found. v. Kaler*, 370 F. Supp. 3d 967, 980 (D. Minn. 2019) ("[W]hether suing a state defendant in their official or individual capacity, a plaintiff must plausibly allege that that official had some kind of personal involvement with the purportedly unconstitutional policy or action.") (emphasis added); *see also Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1019 (D. Minn. 2014) ("With respect to the claims for injunctive relief against the Individual Defendants and Bazzaro in their official capacities, these claims are deficient because

they fail to plead that any constitutional violations perpetrated by the Individual Defendants and/or Bazzaro that were the result of an unconstitutional policy or custom of the University.") (citations omitted). Conclusory assertions are insufficient. *See Lollie v. Johnson*, No. 14-cv-4784 (SRN/HB), 2015 WL 3407931, at *6 (D. Minn. May 27, 2015) (citation omitted).

As such, official capacity claims against Defendants should be dismissed for failure to state a claim for relief.

**B.     Section 1983 Individual Capacity Claims**

Defendants argue that the claims against them in their individual capacities should be dismissed for failure to state a claim and on the basis that they are entitled to qualified immunity.

**1.     Count One**

With respect to Count One, as best as this Court can discern, Plaintiff is arguing that Defendants retaliated against him when he refused to admit to the MSOP that he has a mental illness, especially in light of the 2017 court decision finding that he is not mentally ill. "To prevail on his First Amendment retaliation claim, [Plaintiff] must show (1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [Plaintiff's] exercise of his constitutional rights." *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 943 (8th Cir. 2016) (quoting *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)). The First Amendment prohibits compelled speech in which the government requires an individual

"personally to express a message he disagrees with." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005); *see also Gralike v. Cook*, 191 F.3d 911, 917 (8th Cir. 1999) ("[T]he First Amendment . . . bars . . . state action which compels individuals to speak or express a certain point of view.") (string citation omitted).

Even assuming all of the allegations in the Complaint are true and drawing all reasonable inferences in the light most favorable to Plaintiff, *see Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986), the Court concludes Plaintiff has not plausibly alleged a violation of his First Amendment rights or a resulting retaliation for exercising those rights in Count One. As Defendant argues (Dkt. 22 at 18-19), the adverse actions complained of arise out of BERs dealing with the violation of his IPP, in particular his harassment or excessive contact with staff, as he was limited to approaching the staff desk only twice a day for ten minutes each time. (*See, e.g.,* Dkt. 1 ¶¶ 22 & n.2, 28-29, 32-33, 38, 39, 42, 43.) Indeed, the gravamen of the Complaint is that Irwin is being precluded from talking with staff about ideas whenever he wishes, which is leading to his punishment and resulting placement in a unit with restrictions. (*Id.* ¶¶ 31, 50-51.) The Court notes that Plaintiff asserts in a footnote "that most of these write-ups are because Mr. Irwin refuses to follow an IPP that allows staff to chill his speech **and [sic] force him to admit that he has a mental illness**." (Dkt. 1 at p. 9 n.3 (emphasis added).) However, he pleads no facts to support that the adverse action taken against him involved a retaliatory animus for not admitting that he has schizophrenia, and the allegation is the type of speculative and conclusory allegations of retaliation (especially as it relates to the

actions of each of the Defendants individually) that should be dismissed.  *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996).

### 2.    Count Two

Defendants also assert that Plaintiff has failed to state a claim for relief as to Count Two.  (Dkt. 22 at 17-18.)  Defendants appear to characterize Count Two as a procedural due process claim under the Fourteenth Amendment as it relates to the BERs.  (*Id.*)  Plaintiff does not reference procedural due process or the Fourteenth Amendment in his Complaint, and instead the claim on its face relates to the IPP and the resulting BERs as a claim alleging an unconstitutional restraint on freedom of speech under the First Amendment.  (Dkt. 1 ¶ 51.)

Plaintiff takes issue with the restrictions in his IPP in that he claims to have the right to share his ideas with MSOP staff, even at the staff desk.  Plaintiff's First Amendment claims with respect to access to MSOP staff must be reviewed in light of appropriate therapeutic interests as well as relevant safety and security concerns.  *See Karsjens v. Jesson*, 6 F. Supp. 3d 916, 937 (D. Minn. 2014).  Defendants have not raised any arguments with respect to the viability of the First Amendment claim in Count Two and the Court will not make the arguments for them.[10]  *See also Meyer v. Stacken*, No. 17-CV-1761-ADM-KMM, 2019 WL 4675353, at *3-4 (D. Minn. July 25, 2019), *R.&R.*

---

[10]    The Court acknowledges that Defendants made arguments with respect to the First Amendment and Count One.  (Dkt. 22 at 18-19; Dkt. 38 at 4-5.)  However, as to Count One, Defendants made the argument that Plaintiff was not retaliated against for refusing not to admit that he has schizophrenia, and did not address whether the IPP precluding him from talking to staff constituted an impressible infringement of Plaintiff's free speech rights.

*adopted*, 2019 WL 4673941 (D. Minn. Sept. 25, 2019).  As such, any motion to dismiss

Count Two should be denied on this record.

### 3.    Qualified Immunity

Defendants also argue that the claims against them in their individual capacity

should be dismissed because they are entitled to qualified immunity.  (Dkt. 22 at 20-21.)

The Supreme Court recently laid out qualified immunity's parameters as follows:

> Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."  This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be "settled law," which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'"  It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that "every reasonable official" would know.
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.  The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  This requires a high "degree of specificity."  We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal citations omitted).  A government

official is entitled to qualified immunity unless "both of these questions are answered

affirmatively." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (marks and

citation omitted).

 For purposes of the qualified immunity analysis, a right is clearly established "if

its contours were sufficiently definite that any reasonable official in [the defendant's]

shoes would have understood that he was violating it, meaning that existing precedent

placed the statutory or constitutional question beyond debate."  *City & Cty. of S.F., Cal.

v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (cleaned up).  The key inquiry into the law of

the controlling jurisdiction or the consensus of cases of persuasive authority is "whether

it would have been clear to a reasonable officer in the defendant's position that their

conduct was unlawful in the situation they confronted."  *Wood v. Moss*, 572 U.S. 744,

758 (2014) (cleaned up); *Jacobson v. McCormick*, 763 F.3d 914, 918 (8th Cir. 2014)

(citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).  In other words, "[t]he salient

question is whether the state of the law at the time of an incident provided fair warning to

the defendants that their alleged conduct was unconstitutional."  *Tolan v. Cotton*, 572

U.S. 650, 656 (2014) (cleaned up).  "There is no requirement that the very action in

question has previously been held unlawful, but rather, in the light of pre-existing law the

unlawfulness must be apparent."  *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001)

(cleaned up).  This exacting standard "gives government officials breathing room to make

reasonable but mistaken judgments about open legal questions" by protecting "all but the

plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563

U.S. 731, 743 (2011) (cleaned up).

Even assuming that Defendants were attempting to convince Plaintiff to admit that he was suffering from schizophrenia as part of his treatment goals, given his 2019 diagnosis, regardless of a court's previous finding two years earlier, Plaintiff has not identified, and the Court has not found, any controlling case law holding that attempting to convince an individual to come to terms with their mental illness constitutes a violation of their constitutional rights. *See Favors v. Mike*, No. 20CV00365SRNDTS, 2021 WL 222935, at *4 (D. Minn. Jan. 22, 2021) ("Here, Favors alleges that Defendants violated his constitutional rights by subjecting him to additional treatment following his admission of affection toward one of his peers and his reports to MSOP officials alleging the sexual exploitation of that peer by H.R. and J.G., that Defendants refused to increase Favors' treatment scores, and that Defendants denied Favors' requests to transfer to a different living unit. Favors has not identified, and the Court has not found, any case law holding that such allegations constitute violations of Favors' constitutional rights—let alone sufficiently definite case law as to put 'any reasonable official in the defendant's shoes' on notice."). The Court therefore finds that dismissal of Count One on qualified immunity grounds is appropriate.

As set forth above, since Defendants did not address the viability of the free speech claim in Count Two, the Court will not recommend dismissing as to Count Two on the basis of qualified immunity.[11]

---

[11]    While Defendants argue that Plaintiff's claims against Defendants McDowell, Shelton, Menten, Koecher, Leal, Ward, and Ninneman, in their official and individual

## C.      State Law Claims

Plaintiff asserts state law claims under Minn. Stat. § 144.651 and § 253B.03.

(Dkt. 1 ¶ 3.)  Defendants contend that are no viable claims under these statutes.  (Dkt. 22

at 13 n.5.)  Courts have concluded that neither of these statutes afford Irwin with any

relief:

> The patients' bill of rights vests exclusive authority with the commissioner
> of health to address violations of the enumerated rights.  Minn. Stat §
> 144.653, subd. 1 (2008). Section 253B.03 provides civilly committed
> persons the same grievance procedure required under the patient's bill of
> rights.  See Minn. Stat. § 144.651, subd. 20 (requiring facilities to have
> "written internal grievance procedure that . . . sets forth the process to be
> followed; specifies time limits . . .; [provides] the assistance of an advocate;
> requires a written response . . .; and provides for a timely decision by an
> impartial decision maker").  In this way, the legislature has provided a
> remedy for rights granted in section 253B.03.  As the supreme court noted
> in *Becker*, courts should avoid imputing a cause of action where a statute
> has explicitly provided an alternative remedy.  737 N.W.2d at 207.  For this
> reason, we do not imply a cause of action under either statute.

*Semler v. Ludeman*, No. A08-1477, 2009 WL 2497697, at *3 (Minn. Ct. App. Aug. 18,

2009) (ellipses and alteration in original); *see also Kunshier v. Minnesota Sex Offender*

*Program,* No. A09-0133, 2009 WL 3364217, at *7 (Minn. Ct. App. Oct. 20, 2009)

("[T]he district court properly found that Kunshier has no cause of action provided under

---

capacities, must be dismissed for lack of personal involvement (*see* Dkt. 22 at 15-17), the
Complaint adequately references their involvement with respect to directly enforcing or
otherwise allowing the IPP to infringe his speech (as opposed to a theory of respondeat
superior), except for Dr. Leal.  (*See, e.g.,* Dkt. 1 ¶¶ 9, 12, 14, 15, 16, 20, 41, 44, 45, 46);
*see also Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).  As such, except for Dr. Leal,
the Court finds that dismissal on this basis is not appropriate as to Count Two in their
individual capacities, and does not address the argument as to Count One given that the
Court has already recommended dismissal as to Count One.

either chapter 253B or chapter 144.").  Given that these statutes do not provide a viable claim for relief, the motion to dismiss as to these claims should be granted.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**: Defendants' Motion to Dismiss (Dkt. 20) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Defendants' Motion to Dismiss be **GRANTED** as to all official capacity claims and that the claims be **DISMISSED WITHOUT PREJUDICE**;

2.    Defendants' Motion to Dismiss be **GRANTED** as to Count One to the extent Count One asserts claims under 42 U.S.C. § 1983 against Defendants in their individual capacities and that the claims be **DISMISSED WITHOUT PREJUDICE**;

3.    Defendants' Motion to Dismiss be **GRANTED** as to all state law claims and that the claims be **DISMISSED WITH PREJUDICE**;

4.    Defendants' Motion to Dismiss be **GRANTED** with respect to Count Two to the extent Count Two asserts claims under 42 U.S.C. § 1983 against Defendant Dr. Crystal Leal in her individual capacity and that the claim be **DISMISSED WITHOUT PREJUDICE**; and

5.      Defendants' Motion to Dismiss be **DENIED** with respect to Count Two to

the extent Count Two asserts claims under 42 U.S.C. § 1983 against Defendants other

than Defendant Dr. Crystal Leal in their individual capacities.


DATED: January 29, 2021                    *s/Elizabeth Cowan Wright*
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge



## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is
therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific
written objections to a magistrate judge's proposed finding and recommendations within
14 days after being served a copy" of the Report and Recommendation.  A party may
respond to those objections within 14 days after being served a copy of the objections. D.
Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line
limits set for in D. Minn. LR 72.2(c).